**Frank SMITH, Petitioner–Appellant,**

v.

**James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.**

No. 91–8197.

United States Court of Appeals, Fifth Circuit.

Nov. 24, 1992.

Rehearing Denied Jan. 5, 1993.

---

W.V. Dunnam, Jr., Waco, Tex., for petitioner-appellant.

Dana E. Parker, Asst. Atty. Gen., Dan Morales, Atty. Gen., Austin, Tex., for respondent-appellee.

Before THORNBERRY, GARWOOD, and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner-appellant Frank Smith (Smith) appeals the district court's denial of his habeas corpus petition under 28 U.S.C. § 2254 challenging his Texas 1977 conviction and sentence for aggravated robbery. Concluding that Smith has demonstrated no reversible error in the district court's denial of relief, we affirm.

### Factual and Procedural Background

Smith was convicted of aggravated robbery in September 1977 in Gillespie County, Texas. The indictment alleged two prior convictions, a 1952 conviction and a 1966 conviction, for the purpose of sentence enhancement. Smith did not object to proof of either of the prior convictions. As a result of the two prior convictions, Smith's sentence was enhanced to a mandatory life sentence. *See* TEX.PENAL CODE ANN. § 12.-42(d). On May 25, 1983, the Texas Court of Criminal Appeals, on Smith's direct appeal, affirmed the conviction and sentence. *See Smith v. State,* 650 S.W.2d 842 (Tex. Cr.App.1983) (table) (unpublished).

While Smith was incarcerated for the 1977 aggravated robbery conviction, he learned of the Supreme Court's 1965 decision in *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), holding that a material witness could not serve as a bailiff in the same criminal trial in which he was testifying. Smith remembered that two of the state's witnesses, the sheriff and deputy sheriff of Falls County, in his 1952 trial also served as bailiffs in that trial. Thus, in May 1984 Smith filed an application for writ of habeas corpus in state district court challenging the validity of his 1952 Falls County conviction. Smith contended that the bailiffs who attended the jury during the trial were also material witnesses, in violation of *Turner.*

The presiding judge of the 82nd Judicial District Court of Falls County, Texas, recommended that Smith's application for state habeas relief be granted, and the Falls County District Attorney admitted the truth of some of Smith's allegations. Notwithstanding the district court's recommendation, the Texas Court of Criminal Appeals denied Smith's application without written order on July 18, 1984. Smith's counsel filed a motion to reconsider on July 29, 1984. On December 12, 1984, the Texas Court of Criminal Appeals issued an *en banc* Order. The court noted that the district court had not held an evidentiary hearing, and that the district judge had represented Smith in his 1952 trial. The court found it appropriate that another judge be appointed to preside over further hearings, ordered that an evidentiary hearing be held, and that Smith present evidence regarding the reason for his thirty-two year delay in challenging his 1952 conviction and whether such delay constituted laches.

After holding an evidentiary hearing, the state district court found that two material witnesses in the 1952 trial served as bail-

iffs, went to dinner and a movie with the jury, and interacted with the jury during the deliberation stage. The court also found that "the Statement of Facts in [the 1952 case] did not contain any reference to who the bailiffs were and the papers of the cause do not reveal such fact." The state district court concluded that "Smith first acquired knowledge that the above facts might [a]ffect the validity of said conviction at some time in the past few years when he read a law book," that Smith "was not guilty of any laches," and that "as a matter of law [Smith] is entitled to the relief sought herein." On June 19, 1985, the Texas Court of Criminal Appeals granted Smith habeas relief and set aside his 1952 conviction.

In November 27, 1985, Smith filed an application for state habeas relief in the 216th Judicial District of Gillespie County challenging the validity of his 1977 conviction. Smith alleged that: (1) his 1977 conviction and sentence were void because the subsequently vacated 1952 conviction had been used for enhancement; (2) if the court determined that he had not shown cause for failing to object to the introduction of the 1952 conviction, his counsel's failure to object constituted ineffective assistance of counsel; (3) the trial court erroneously instructed the jury that convictions of witnesses could not be considered for any purpose except credibility; (4) the trial court erred in not allowing Smith to present evidence on his motion to change venue until after the jury had been selected and sworn and in overruling said motion; (5) the trial court erred in overruling Smith's challenges for cause; (6) a material witness knowingly testified falsely and the State knowingly withheld this evidence from Smith; and (7) the Texas Court of Criminal Appeals erred in not extending the time in which Smith could file a pro se supplemental appellate brief.

The state trial court conducted an evidentiary hearing. With regard to the claim of improper enhancement, the court found that

"Applicant's [1977] trial counsel was informed by Applicant that key State's witnesses served as jury bailiffs in the [1952 trial] in the District Court of Falls County subsequent to Applicant's conviction in [1977] in the District court of Gillespie County being affirmed by the Court of Criminal Appeals. Nothing in the record or statement of facts of the Falls County trial reflected such occurrence, and Applicant did not know until after his Gillespie County conviction was affirmed that such occurrence rendered the Falls County conviction void."

The district court entered the following legal conclusions: (1) "Applicant's failure to object at his trial in Gillespie County to the introduction of his prior conviction in Falls County on the ground that such conviction was void because key State's witnesses served as jury bailiffs precludes his collaterally attacking his Gillespie County conviction on that ground"; (2) "Applicant failed to establish 'cause' for his failure to object to the admissibility of his prior conviction"; and (3) "Considering the totality of his representation and his unawareness of the infirmity in the prior conviction, Applicant's attorney did not render ineffective assistance of counsel in failing to object to the admissibility of the prior conviction on the ground that it was constitutionally void." On September 30, 1987, the Texas Court of Criminal Appeals denied Smith's application for state habeas relief "without written order on findings of the trial court after hearing."

Having exhausted his state remedies, Smith filed the instant petition for federal habeas relief in May 1988. Smith alleged that: (1) his 1977 conviction and sentence were void because the subsequently vacated 1952 conviction had been used for enhancement; (2) if the court determined that he had not shown cause for failing to object to the introduction of the 1952 conviction, his counsel's failure to object constituted ineffective assistance of counsel; (3) the trial court erroneously instructed the jury that convictions of witnesses could not be considered for any purpose except credibility; (4) the trial court erred in not allowing Smith to present evidence on his motion to change venue until after the jury had been selected and sworn; and (5) the Texas

Court of Criminal Appeals erred in not extending the time in which Smith could file a pro se supplemental appellate brief. On April 26, 1990, the magistrate judge issued a report recommending that the district court deny relief. On August 15, 1990, the district court adopted the magistrate judge's findings and conclusions, made additional findings and conclusions, and denied relief. Smith filed a Motion for Reconsideration, which the district court denied on March 10, 1991.[1] Smith brings this appeal.

### Discussion

#### I. Void Enhancement Conviction

The district court rejected Smith's contention that he was entitled to habeas relief because his void 1952 conviction was used to enhance his 1977 sentence. The district court found that the Texas Court of Criminal Appeals denied Smith relief on the basis of a state procedural bar, and that Smith had not shown adequate cause for his failure to make a timely objection. Smith contends that the district court erred both in concluding that he had not demonstrated cause and that the Texas Court of Criminal Appeals relied on a procedural default in denying relief.

#### A. Procedural bar

We first address Smith's contention that we are not barred from reviewing his habeas claim because of procedural default. In Texas, it is well-established that "the failure to object at trial to introduction of proof of an allegedly infirm prior conviction precludes a defendant from thereafter attacking the conviction in which the prior conviction was utilized." *Ex Parte Cashman*, 671 S.W.2d 510, 512 (Tex.Crim.App. 1983) (en banc) (opinion on State's Motion for Rehearing). Generally, "[u]nless a habeas petitioner shows cause and prejudice, a court may not reach the merits of: ... (c) *procedurally defaulted claims* in which

the petitioner failed to follow applicable state procedural rules in raising the claims." *Sawyer v. Whitley*, —— U.S. ——, ——, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992). However, under *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989), absent a "plain statement" that the claim is barred by a state procedural default, "federal courts ... will presume that there is no independent and adequate state ground for a state court decision [if] the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Coleman v. Thompson*, —— U.S. ——, ——, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476–77, 77 L.Ed.2d 1201 (1983)).

Although Smith's argument is somewhat unclear, he appears to contend that the Texas Court of Criminal Appeals did not clearly and expressly rely on a procedural default in denying habeas relief, and that therefore this Court must presume that no adequate and independent state ground bars federal court consideration of the claim. Smith reasons that because the Texas Court of Criminal Appeals simply denied relief without written order on the findings of the trial court, the last court rendering judgment on the claim did not clearly and expressly apply the state procedural bar.

We are convinced that the *Harris* presumption does not apply. The presumption applies only "when it fairly appears that a state court judgment rested on primarily federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision." *Coleman*, —— U.S. at ——, 111 S.Ct. at 2559. In this case, there is no reason to

---

1. While Smith's motion for reconsideration was pending before the district court, he filed a notice of appeal to this court on August 27, 1990. We dismissed the appeal on October 2, 1990, finding that we were without jurisdiction because Smith's pending motion for reconsideration was a Rule 59(e) motion that nullified his notice of appeal. *See Smith v. Collins*, No. 90–8492 (5th Cir. Oct. 2, 1990). Smith filed another notice of appeal on April 2, 1991.

question whether there was an adequate and independent state ground for the Court of Criminal Appeals' denial of Smith's claim because the state district court considered only state grounds before denying relief and there were really never any other grounds at issue. The state trial court, after holding an evidentiary hearing, determined that Smith's "failure to object at his trial in Gillespie County to the introduction of his prior conviction in Falls County on the ground that such conviction was void because key State's witnesses served as jury bailiffs precludes his collaterally attacking his Gillespie County conviction on that ground." The Texas Court of Criminal Appeals denied Smith's application "without written order on findings of the trial court." *See also Young v. Herring,* 938 F.2d 543, 553 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1485, 117 L.Ed.2d 627 (1992); *Russell v. Lynaugh,* 892 F.2d 1205, 1210–11 (5th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 2909, 115 L.Ed.2d 1073 (1991). The district court did not err in finding that the Texas Court of Criminal Appeals denied Smith's claim regarding the invalid enhancement conviction on the basis of a state procedural default.

### B. Cause and prejudice

Because we conclude that the Texas Court of Criminal Appeals denied Smith's claim as procedurally barred under state law, federal habeas review of the claim is likewise barred unless Smith demonstrates cause and prejudice or comes within an exception to that requirement:

> "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* —— U.S. at ——, 111 S.Ct. at 2565.

In Smith's state habeas case, the state district court expressly determined that Smith had not demonstrated cause to overcome the procedural bar, and that the legal basis for objecting to the use of the 1952 conviction in the 1977 trial had been available since 1965 when the Supreme Court decided *Turner.* The Texas Court of Criminal Appeals adopted these determinations in denying relief.[2]

The Supreme Court established the cause and prejudice requirement for overcoming a state procedural bar in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), but left open " 'for resolution in future decisions the precise definition of the "cause"-and-"prejudice" standard.' " *Murray v. Carrier,* 477 U.S. 478, 486, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986) (quoting *Sykes,* 433 U.S. at 87, 97 S.Ct. at 2507). The Supreme Court has clarified the meaning of cause and prejudice in later cases. *See Murray v. Carrier,* 477 U.S. 478, 487, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *Engle v. Isaac,* 456 U.S. 107, 132–133, 102 S.Ct. 1558, 1574–1575, 71 L.Ed.2d 783 (1982). It has stated that if the "basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim," a particular defendant's lack of knowledge of the legal basis for the claim does not constitute cause for the failure to raise the claim below. *Engle,* 456 U.S. at 134, 102 S.Ct. at 1575. The general test of whether a petitioner has demonstrated cause has been explained as ordinarily "turn[ing] on whether the [petitioner] can show that some *objective factor external to the defense* impeded counsel's efforts to comply with the State's procedural rule." *Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645. One such external factor that demonstrates cause is whether the "factual or legal basis for a claim was not reasonably available to counsel." *Id.*

■ Smith insists that he has demonstrated sufficient "cause" for his failure to object to the 1952 conviction at the 1977

---

**2.** We presume that a state court's findings of fact in a habeas proceeding are correct, but we review the legal conclusions *de novo. See* 28 U.S.C. § 2254(d).

trial. Smith reasons that while the legal basis for his claim had been available since 1965, the factual basis was not reasonably available to his counsel. This argument has some appeal. While Smith clearly knew that two of the witnesses in his 1952 trial also served as bailiffs, he was unaware of the legal significance of those facts—namely, that if a person serves as both a bailiff and a witness in the same trial, the conviction is invalid. *See Turner.* Because Smith attached no significance to the two witnesses serving as bailiffs during the 1952 trial, he did not mention that fact to his attorney in 1977 when his attorney questioned him about the prior convictions. As found by the state trial court, and confirmed by our review of the record, there was nothing in the record of the 1952 conviction reflecting that the sheriff and deputy sheriff, who each testified as witnesses, had also both served as bailiffs in the trial. Accordingly, Smith's attorney, a person charged with knowledge of the legal significance of facts, was never alerted that two of the material witnesses also served as bailiffs in the case.

Nevertheless, we conclude that Smith has not demonstrated cause to overcome the procedural bar. In reaching this conclusion, we rely on *Weaver v. McKaskle,* 733 F.2d 1103 (5th Cir.1984), which is factually analogous. Weaver was convicted of aggravated robbery in 1977 and his sentence was enhanced by prior Illinois and Kansas convictions. Weaver objected to the introduction of his Illinois conviction on the grounds that he had been pardoned and it was no longer a final conviction. The court overruled the objection, and the jury assessed a life sentence. In 1980, Illinois courts set aside Weaver's prior Illinois conviction in a state habeas proceeding on the ground that "a bona fide doubt existed as to whether Weaver had been competent to stand trial in 1960, and no hearing had been held to determine his competency." *Id.* at 1104. Weaver subsequently filed a federal habeas petition challenging his 1977 conviction. We affirmed the district court's denial of relief. We determined that, by not objecting to the conviction on the ground that he had been incompetent,

Weaver's complaint about the Illinois conviction was procedurally barred. *Id.* at 1106–07. We also concluded that Weaver had not demonstrated cause for the procedural default because the legal basis for the objection had been available since *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). We rejected Weaver's argument that because he had been incompetent in 1960, " 'he did not know what precisely was the error in his prior conviction.' " *Id.* at 1105. We reasoned that under *Engle v. Isaac,* the proper inquiry focussed on the "availability of a basis for a constitutional claim, regardless of the defendant or his counsel's unawareness of such a claim." *Id.* at 1106.

While a reasonable attorney reading the record of Smith's trial would not have been put on notice that a *Turner* error had likely occurred, nothing in that record (or elsewhere) suggests that a *Turner* error had *not* occurred. The record reflects that the sheriff and deputy sheriff of the small, rural Texas county where Smith was tried testified at Smith's trial; it discloses nothing about who served as bailiffs. Texas law at the time required the sheriff of the county where the trial was held to furnish (or be) the bailiff(s) to attend the jury. Vernon's Annotated Code of Criminal Procedure, 1925, article 673. It would have been a reasonable inference that the Falls County Sheriff's Department in 1952 was not large and that one or more of its personnel served as bailiff. Texas law in 1952 did not proscribe service as bailiff by an officer who testified in the same case. As reflected in recognized legal literature, the practice denounced in *Turner* was in no sense wholly aberrational or universally condemned before 1965. *See Turner,* 379 U.S. at 472–473, 85 S.Ct. at 550 (Clark, J., dissenting) (noting the "widespread acceptance of the practice" of an officer who testifies in a case also being in charge of the jury and stating that it was approved by the highest courts of a number of other jurisdictions, *American Jurisprudence,* and *Corpus Juris Secundum* ); *Gonzales v. Beto,* 445 F.2d 1202, 1205 (5th Cir.1971) ("In accordance with the practice then uni-

formly prevailing, a procedure not challenged at the time but which has since been expressly prohibited by Texas statutes, the sheriff of the small Texas county of Dawson acted as the bailiff to the trial jury....”), *reversed*, 405 U.S. 1052, 92 S.Ct. 1503, 31 L.Ed.2d 787 (1972); *see also* 23A C.J.S., *Criminal Law* § 1352, at 946 (1961) (stating that an officer is not disqualified from acting as bailiff merely because he is sworn and testifies in the case). Therefore, while there was no reason for Smith's counsel to assume from the record that a *Turner* error had likely occurred, neither would it have been entirely frivolous or a patently wholly useless exercise to further investigate whether the local sheriff or deputy of this small county where the 1952 trial was held, testimony by whom the record reflects, also performed service as bailiffs in the trial. Nothing in the record (or otherwise) suggests they did *not* so serve.[3] Nothing was hidden; no one was misled. Smith all along was aware of the facts essential to a *Turner* claim. In these circumstances, though Smith's 1977 counsel was unaware of the essential facts, we are unable to say that they were not reasonably available to him.

Having concluded that Smith has not demonstrated cause, we do not need to reach the issue of prejudice. Indeed, the parties do not mention it in their briefs. Despite the fact that Smith would still be subject to receiving a life sentence if he were resentenced, we assume that Smith has been prejudiced by a refusal to review this claim because he is serving a mandatory life sentence. The state trial court that sentenced him had no choice, based on the two prior convictions, but to impose a life sentence; whereas, if his sentence were enhanced with only one prior conviction, the court or jury would have the discretion to impose a sentence within a range of fifteen years to life imprisonment. *See* TEX.PENAL CODE ANN. § 12.42(c) (Vernon 1974).

## C. Actual innocence

Our review of Smith's claim regarding the void enhancement conviction does not end, however, with our determination that Smith has not established cause. “[E]ven if a state prisoner cannot meet the cause and prejudice standard a federal court may hear the merits of the successive claims if the failure to hear the claims would constitute a 'miscarriage of justice.' ” *Sawyer*, —— U.S. at ——, 112 S.Ct. at 2518. The Supreme Court has held this exception applicable to procedurally defaulted claims, stating that where “a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.” *Carrier*, 477 U.S. at 496, 106 S.Ct. at 2649.[4]

---

**3.** Smith's attorney in the 1977 trial testified at the 1986 evidentiary hearing in the Gillespie County state habeas case that in his many years of practice he had never heard of a sheriff both testifying and serving as bailiff. This testimony, the veracity of which we accept, is not dispositive, however. At the time of Smith's 1952 conviction, it was obviously not an unusual enough occurrence for a peace officer to both testify and serve as bailiff for either Smith's counsel or the trial judge to even comment thereon. Indeed, until the Supreme Court's decision in *Turner* in 1965, nothing prohibited such a practice. The Supreme Court subsequently held *Turner* to be fully retroactive, *see Gonzales v. Beto*, 405 U.S. 1052, 1056 n. 4, 92 S.Ct. 1503, 1506 n. 4, 31 L.Ed.2d 787 (1972), and the Texas Court of Criminal Appeals has applied *Turner* to cases that arose before *Turner* where no objection was raised at trial. *See Ex Parte Halford*, 536 S.W.2d 230, 233 (Tex.Crim.App.1976). Addition-

ally, the Texas Legislature enacted legislation in 1965 providing that “[i]f the person furnished by the sheriff [as bailiff to the jury] is to be called as a witness in the case he may not serve as bailiff.” TEX.CODE CRIM.PRO.ANN. art. 36.24 (Vernon 1981). The commentary to this amendment by two former Chief Judges of the Texas Court of Criminal Appeals reflects that it was prompted by *Turner* and designed to avoid a recurrence of what happened there. *See* TEX. CODE CRIM.PRO.ANN., commentary following art. 36.24 (Vernon 1981). This case thus presents the scenario in which a practice not universally condemned in 1952 had become virtually unthinkable long before 1986.

**4.** Smith does not raise this argument, and the State only summarily rebuts it, contending that the “fundamental miscarriage of justice” exception applies to sentencing procedures only in capital cases.

The Supreme Court has extended the actual innocence exception to the sentencing phase of capital trials. *See Sawyer,* ── U.S. at ──-──, 112 S.Ct. at 2519–22; *Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986). In *Smith,* the Court acknowledged that actual innocence "does not translate easily into the context of an alleged error at the sentencing phase of a trial on a capital offense." *Id.* In *Sawyer,* the Supreme Court held "that to show 'actual innocence' one must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Id.,* ── U.S. at ──, 112 S.Ct. at 2517.

While the Supreme Court has not addressed whether the actual innocence exception may apply to the sentencing phase of non-capital trials, a handful of lower federal courts have confronted the issue. *See Jones v. State of Arkansas,* 929 F.2d 375 (8th Cir.1991); *Pilchak v. Camper,* 935 F.2d 145 (8th Cir.1991); *U.S. ex rel Henderson v. Thieret,* 671 F.Supp. 1193 (N.D.Ill.1987), *aff'd,* 859 F.2d 492 (7th Cir. 1988), *cert. denied sub nom. Henderson v. Greer,* 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989). The Eighth Circuit has concluded that the actual innocence exception should be transported into the sentencing phase of non-capital trials. *See Jones,* 929 F.2d at 381; *Pilchak,* 935 F.2d at 148. *But see Thieret,* 671 F.Supp. 1193, 1201 ("This Court finds that *Smith v. Murray* has no general application beyond capital cases. . . .").

Assuming, without deciding, that the actual innocence exception can extend, in the abstract, to non-capital sentencing procedures, we are convinced that actual innocence in a non-capital sentencing case can be no less stringent than the Supreme Court's formulation of actual innocence in capital sentencing. To that end, actual innocence must mean something more than a simple demonstration of prejudice. *See Sawyer,* ── U.S. at ──, 112 S.Ct. at 2522 (rejecting petitioner's interpretation of actual innocence because it would require "little more than what is already required to show 'prejudice' "). In *Sawyer,* the Supreme Court framed the inquiry as whether absent the constitutional error, "no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Id.* ── U.S. at ──, 112 S.Ct. at 2517. We conclude that the focus on the legal eligibility of the petitioner for the sentence received would be dispositive in non-capital sentencing cases also. Thus, assuming the "actual innocence" exception is available in a non-capital sentencing case, for a defendant to demonstrate actual innocence of the sentence imposed he would have to show that but for the constitutional error he would not have been legally eligible for the sentence he received. In the instant case, however, even if Smith had not been sentenced as a habitual offender, the jury still could have sentenced him to life. *See* Tex.Penal Code Ann. § 12.42(c) (Vernon). That the admission of the later-voided 1952 conviction made life imprisonment mandatory does not rise to the level of manifest injustice so as to allow us to circumvent his procedural default.[5]

---

5. We note that the Eighth Circuit, prior to the Supreme Court's decision in *Sawyer,* granted a defendant habeas relief on analogous facts. *See Jones,* 929 F.2d at 381. In *Jones,* the defendant was charged with committing aggravated robbery and burglary in May 1983. At the time the defendant committed the crime, the state habitual offender statute required three prior felonies. The Arkansas legislature amended the statute before the defendant was tried to only require two felonies. The judge applied the amended version of the statute to the defendant, instructed the jurors that the defendant was a habitual offender, and the defendant was accordingly sentenced to life imprisonment plus thirty years. The defendant filed for federal habeas relief, arguing that the application of a statute that was not in effect at the time he committed the crime violated the *ex post facto* clause. The state argued procedural default. The Eighth Circuit noted that normally a habeas petitioner must show cause and prejudice to excuse a procedural default, but recognized the existence of the actual innocence exception. *Jones,* 929 F.2d at 380. The court held that it was appropriate to apply the actual innocence exception to the sentencing phase of this non-capital case because "sentencing under the Arkansas habitual offender statute is akin to a trial on guilt or innocence, much like capital sen-

## II. Ineffective Assistance of Counsel

 Smith claims that if we do not find sufficient "cause" for the procedural default, then, by failing to object to the prior conviction, his counsel must necessarily have acted so ineffectively as to violate his constitutional right to effective assistance of counsel. We disagree. In the vast majority of cases, Smith's argument would lead to the conclusion that if there were not "cause" for a procedural default, then it necessarily follows that counsel was ineffective, and habeas relief thus available on that basis. The Supreme Court clearly rejected such an "either or" approach in *Smith*, 477 U.S. at 535, 106 S.Ct. at 2667, and *Carrier*, 477 U.S. at 485–88, 106 S.Ct. at 2644–45. To say, as we have here, that it would not have been entirely frivolous or a patently wholly useless exercise to have inquired whether the testifying sheriff or deputy served as a bailiff in the 1952 trial is not to say that the failure to do so fell without the "wide range of professionally competent assistance" recognized in *Smith* and *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Having a "wide range" necessarily allows for situations in which each of two opposite courses of action may properly fall within the ambit of acceptable professional conduct. The defense of a criminal case is not an undertaking in which everything not prohibited is required. Nor does it contemplate the employment of wholly unlimited time and resources. Just as counsel is not obliged to advance every available nonfrivolous argument, *Carrier*, 477 U.S. at 485–88, 106 S.Ct. at 2644–45; *Smith*, 477 U.S. at 535, 106 S.Ct. at 2667, so counsel is not necessarily ineffective for failing to investigate every conceivable matter inquiry into which could be classified as nonfrivolous. Moreover, even if counsel's conduct or inaction in a given particular may fairly be characterized as "attorney error," nevertheless "[a]ttorney error short of ineffective assistance of counsel ... does not constitute cause and will not excuse a procedural default." *McCleskey v. Zant*, — U.S. —, —, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991).

 The Supreme Court delineated the test for ineffective assistance of counsel in *Strickland*. To sustain such a claim "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*, 466 U.S. at 687, 104 S.Ct. at 2064. "Judicial scrutiny of counsel's performance must be highly deferential" and must eliminate "the distorting effect of hindsight." *Id.* 466 U.S. at 689, 104 S.Ct. at 2065. "[T]he range of attorney conduct that may be considered reasonable is extremely wide." *Lincecum v. Collins*, 958 F.2d 1271, 1278 (5th Cir.1992).

> "To succeed on a claim of ineffective assistance of counsel, a defendant must demonstrate ... that his counsel's performance was 'outside the wide range of professionally competent assistance,' .... The burden of proving ... [this] element is heavy, as 'counsel is strongly presumed to have rendered adequate assistance and ... exercise[d] reasonable professional judgment,' and every legal proceeding commands a 'strong presumption of reliability.' " *Kirkpatrick v. Butler*, 870 F.2d 276, 279 (5th Cir.1989) (quoting *Strickland* ), *cert. denied*, 493 U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990).

tencing proceedings." *Id.* at 381 n. 16. The court concluded by justifying its decision to extend the actual innocence exception to this case: "It would be difficult to think of one who is more 'innocent' of a sentence that a defendant sentenced under a statute that *by its very terms* does not even apply to the defendant." *Id.* at 381.

We are convinced that the Eighth Circuit's inquiry has been effectively superseded by *Sawyer*. The Eighth Circuit focused on the propriety of the method by which Jones was sentenced and not on the propriety of the sentence Jones received. The Eighth Circuit noted that even if Jones had been sentenced under the general sentencing statute instead of under the habitual offender statute, the jury would still have been allowed to impose a sentence of life imprisonment. *Id.* at 379. However, applying the actual innocence test of *Sawyer* to the facts of *Jones* supports the conclusion that Jones had not demonstrated actual innocence because even absent the constitutional error, a reasonable juror could still have found Jones eligible for life imprisonment. Accordingly, we refuse to apply *Jones* to our facts.

Under this standard, we find that Smith's counsel's performance was clearly competent. Examination of the entire record makes it unmistakably clear that in connection with his 1977 trial Smith received thorough, vigorous, and intelligent representation, in the best tradition of the bar, by able and experienced counsel. Among other things, counsel examined all of the indictments, judgments, and sentences regarding the prior convictions and asked Smith all of the relevant questions he thought of regarding the validity of the convictions. Nothing in the record indicated that the testifying officers had or likely had also served as bailiffs. Smith's counsel's failure to object to the prior conviction did not deny Smith the effective assistance of counsel guaranteed by the Sixth Amendment.

### III. Change of Venue

█ Smith's third claim relates to the trial court's refusal to hear evidence supporting a motion for change of venue until after the jury had been selected and sworn. Before his 1977 trial, Smith filed a motion for change of venue. The record indicates that the trial judge requested that the hearing and ruling on the motion be delayed until after *voir dire,* and further supports the district court's conclusion that Smith's trial counsel "specifically stated that he had no objection to postponing the hearing of the venue evidence until after voir dire proceedings." In his habeas proceedings, however, Smith contends that it was constitutional error for the trial judge to delay hearing evidence on the motion until after *voir dire.*

We find Smith's claim to be without merit. Texas law does not require that a motion for change of venue be heard either before *voir dire* is conducted or the jury is sworn. *See Morgan v. State,* 650 S.W.2d 920, 928 (Tex.App.—Tyler 1983, writ ref'd) (a motion for change of venue, which had been denied after the jury had been selected and sworn, was correctly denied); *McManus v. State,* 591 S.W.2d 505, 516–517 n. 1 (Tex.Crim.App.1979) (trial court did not abuse its discretion in denying motion for change of venue, on which hearing was

held after jury was selected), *overruled on other grounds, Reed v. State,* 744 S.W.2d 112 (Tex.Crim.App.1988); *Adami v. State,* 524 S.W.2d 693, 703 (Tex.Crim.App.1975) (not error for a trial court to wait and rule on a motion for change of venue until after the close of *voir dire* of the jury panel). Indeed, the Texas Court of Criminal Appeals has explicitly approved conducting a hearing on a motion to change venue after *voir dire,* noting that when "the hearing [is] conducted after jury selection," it gives "the trial judge an additional barometer of community climate." *Cockrum v. State,* 758 S.W.2d 577, 584 (Tex.Crim.App.1988) (en banc). Further, Smith does not urge that the state trial court abused its discretion in denying the motion to change venue, and after reviewing the testimony presented at the hearing, the newspaper articles entered as exhibits, and the testimony adduced at *voir dire,* we are convinced no such abuse of discretion occurred. Accordingly, the district court did not err in denying Smith habeas relief on this claim.

### IV. Jury Instruction

█ Smith asserts that by giving an instruction that the witnesses' criminal records should be considered only for purposes of determining their credibility, the trial court thwarted his efforts to present his defense. He complains that the criminal records of the two main witnesses, Bailey and Holt, were an integral part of his defense. The record reflects that Smith hired Bailey to commit an arson and Holt to assist in an aggravated robbery. Bailey also testified that Smith told him that Smith had hired some people to commit the robbery. Smith's defensive theory was that Bailey and Holt falsely implicated him in order to obtain lenient treatment from the prosecution. At trial, Smith insisted that he could not have planned the aggravated robbery because (1) he would not have confided in someone like Bailey who had an extensive criminal record and would likely cooperate with the authorities if caught, and (2) he did not think that Holt, a petty thief, would get involved in a violent crime. Smith argues that by telling the jury that it could consider the criminal rec-

ords of the two witnesses only for the purpose of determining credibility, the trial court effectively forbade the jury from considering this defense.

We hold that the district court correctly denied Smith habeas relief on this claim. First, as noted by the district court, the instruction given by the trial court is an accurate reflection of Texas law. *See Smith v. State*, 121 Tex.Crim. 231, 51 S.W.2d 686 (1932). Second, Smith's defense depends completely on credibility. If the jury believed Smith, it disbelieved Bailey and Holt and vice versa. Finally, we are not convinced that " 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *Washington v. Watkins*, 655 F.2d 1346, 1369 (5th Cir.1981) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982). Given that the instruction was at least essentially correct and the jury still could and would have believed Smith's defense if they found him more credible than the other witnesses, we conclude that the instruction was not fundamentally unfair so as to have deprived Smith of due process.

## V. Appellate Brief

Smith alleges that his constitutional rights were violated when (1) the Court of Criminal Appeals refused to allow him to file a supplemental pro se brief on direct appeal after his attorney had already filed a timely brief on his behalf; and (2) his appellate counsel failed to raise on appeal all of the arguments that Smith insisted he raise. Neither of these allegations rises to the level of a constitutional violation.

 First, the Court of Criminal Appeals did not violate Smith's rights by refusing to allow him to file a supplemental pro se brief after his counsel had already filed a brief on his behalf. "It is settled law that a defendant has the right to represent himself in a criminal trial, and that he has the right to the assistance of counsel, but, "[a] 'criminal defendant does not have the right ... to a "hybrid representation,"

partly by counsel and partly by himself.' " *Neal v. Texas*, 870 F.2d 312, 315–16 (5th Cir.1989) (citing *United States v. Daniels*, 572 F.2d 535, 540 (5th Cir.1978)). Recognizing the principle that "[t]here is no right to hybrid representation," the Texas Court of Criminal Appeals has held that pro se briefs "present nothing for review" when they are filed by a defendant who is represented by counsel who has filed a brief on the defendant's behalf. *Rudd v. State*, 616 S.W.2d 623, 625 (Tex.Crim.App.1981). Thus, not only is it within the Texas Court of Criminal Appeals' discretion whether a defendant can have an extension of time to file a pro se brief, the Texas Court of Criminal Appeals is entitled to consider even a timely filed pro se brief (on behalf of a defendant represented by counsel) as a nullity presenting no issues to review. Thus, Smith did not have a constitutional right to file his own brief and the Court of Criminal Appeals was within its discretion in refusing to allow him additional time to file a late pro se brief.

As to Smith's second claim, the Supreme Court has held that a defendant does not have a constitutional right to have his appointed counsel raise every nonfrivolous argument requested by the client. *See Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Smith's counsel's failure to raise each claim that Smith felt should be argued did not violate any of Smith's constitutional rights.

## Conclusion

Having found that the district court properly denied relief on all claims, we affirm.

AFFIRMED.